Case number three, Greenberg v. Commissioner of Internal Revenue, this is 20-13-001. Mr. Mather here for the petitioner, Mr. Sheehan for the respondent. Mr. Mather, you can proceed whenever you're ready, but no hurry. Thank you, Your Honor. May it please the Court, I'm Steve Mather representing the appellant David Greenberg who is here in the courtroom with me. The critical issue in this appeal is the tax court's jurisdiction. The tax court was simply wrong on the determination of its own jurisdiction in each of our five cases that are on appeal. Initially, the 04 NOD and the 05 NOD were both invalid because all of the adjustments in those notices were made to GG Capital. Partnership items and GG Capital had elected to be a TEFRA partnership. TEFRA partnership items cannot be adjusted in an ordinary NOD. The tax court disregarded the plain meaning of the statute and determined that GG Capital could not elect to be TEFRA in 1997 because it was not then a small partnership. It was therefore already a TEFRA partnership. The tax court specifically ruled that only a small partnership could elect TEFRA. A literal reading of the statute, however, makes it clear that only a TEFRA partnership actually can elect to be a TEFRA partnership under the precise terms of the statute. The tax court's ruling violates the express language of this statute. The tax court separately failed to comprehend that the abandonment loss for DBI had to be a TEFRA partnership adjustment that similarly could not be in the 04 NOD. That's because any partnership that is a partner in another partnership automatically makes the DBI partnership, in our case, a TEFRA partnership. This is the only adjustment that remains in the 04 NOD case that the government asserts. And so, therefore, because it was a partnership item included in an NOD, that also has to be jurisdictionally deficient and must be dismissed. Then the third major category is that all three of the 09 NODs suffer from a similar defect. In each of those cases, the NOD itself could only be valid if it was determined that the adjustments in those NODs resulted from the partnership items of AD Global. IRS was never able to show how the adjustments related at all to AD Global, and for the simple reason that there was nothing claimed as a result of the partnership items of AD Global. The tax court failed to make this threshold determination and determined, in the words of the IRS's brief, that wherever the losses may have originated, the tax court disallowed them. Well, this essentially admits that the tax court attempted to make a ruling on the merits without first determining its own jurisdiction, and clearly that is doing this backwards. So based on all of these jurisdictional defects, there's really no issues that the tax court had jurisdiction to decide. And I refer to that as the advisory opinion because basically the tax court was deciding on concepts without first determining if it had the ability under the precise notices, which are what conferred the jurisdiction on the tax court, to make the determination on the merits. With respect to the TEFRA election, the statute is organized somewhat oddly, but when you read the precise terms of the statute, it is in section 6231A1B2 that only a partnership can elect to be TEFRA. It refers to subparagraph A, which read literally means that the definition of partnership under A expressly excludes a small partnership. So a small partnership for the purposes of B2 cannot be a small partnership. So it is, and there's only two types of partnerships basically in the TEFRA world, there's TEFRA partnerships and small partnerships. So the express language of the statute says only a TEFRA partnership may make the TEFRA election, which seems a little odd. Can I ask you just one housekeeping question? I want to make sure that I'm looking at the right version of the statute. So far as I understand, both sides here have been citing the 2002 version of the statute, but the earlier versions, I just want to make sure I'm looking at the right statute. Why is it the 2002 version that we're looking at, or does it even matter? It didn't change from there. It was what I could find. It's kind of hard to find them going back. For this purpose, it didn't change. So what we're dealing with is a somewhat odd situation where somebody, only a partnership that is already a TEFRA partnership can elect to be a TEFRA partnership under the express terms of the statute. But I think the next sentence then provides some explanation of why that makes sense, because it says, effectively, the election takes effect for this year and all future years. So what that allows a partnership to do is if they are a TEFRA partnership in one year, then they can elect to have that apply in all future years, even if in the future year they may not be a TEFRA partnership under the standard definition, which is exactly what happened in our case, is that by 1999, the disqualifying partner had dropped out, and so we only had three individuals, and it was a small partnership. But because of the TEFRA election in 1997, and expressly as authorized by the statute, it remained a TEFRA partnership and had to be audited under those procedures. Can I ask you a question about that 1997 election, and it's that handwritten form, and it's only signed, I believe, by Mr. Greenberg, and then he signed on behalf of others, correct? Correct. So why shouldn't we defer to the commissioner's interpretation of 26 CFR section 301.6231A1-1TB2, which requires each partner individually to sign an election for it to be effective? Well, I think the best way to think of this is that there is the election that is authorized by the statute, which, as I've just said, only is technically available to TEFRA partnerships, and then there is the election that is authorized by this regulation, which by its own terms only applies to an election by a small partnership. And it's undisputed that GG Capital was not a small partnership in our years. So as a purely technical matter, this regulation doesn't even apply at all to our election because it is the election for small partnerships. So what the government effectively did in enacting this regulation is it said, well, the statute says only a TEFRA partnership can elect, but we want an additional election available if a small partnership elects, and so we're enacting a regulation that specifically addresses how the small partnership makes an election. And it also makes sense in the scheme of things because if you're already a small partnership, then the partner in a small partnership is expecting that they're going to receive a notice of deficiency and be able to challenge the partnership adjustments proposed by the IRS on their own. Let me ask you a follow-up on this 1997 handwritten election. As I understand it, Mr. Greenberg claims he got authorization to sign that on behalf of Seladium? Yes. From a guy named Tommy Battiglia, but Mr. Greenberg admits that he doesn't know Battiglia's position at Seladium. So how is this election valid if Mr. Greenberg is purporting to be signing on behalf of Seladium and there's no indication that Seladium has, in fact, given that authorization? Well, I think there are two answers to that, and I would go back to my earlier point, is that our election is under the statute. The statute doesn't require the signature of all parties. And, in fact, Mr. Greenberg is the tax matters partner, and what the whole TEFRA regime does is it gives the tax matters partner the authority to elect, to make all kinds of elections on behalf of all members of the partnership, and, in fact, consolidates the audit within the partnership itself and the TMP as the person that directs that. So if he had just signed it on his own behalf, on behalf of the partnership, that would have been sufficient? Yes. But to address your other point, there is the express authorization under California law for a partnership that an actor, that a partner is the agent for all of the members of the partnership. And so our position is that that was sufficient authorization as a legal matter, but the main position is it wasn't necessary at all because ours was the statutory election by a TEFRA partnership, not the regulatory election by a small partnership. And so there are really two separate forms of election, and the rules that the government claims that we didn't comply with are the ones that don't apply to us. So I guess to finish my point with respect to the reason that a small partnership would have this requirement when it may not exist for the TEFRA partnership is, again, the small partner expects to get a notice of deficiency, and that's an important thing. It's an important part of this process. It's how most tax cases are resolved is getting a notice of deficiency. So it's reasonable in the regulation to require every partner to sign because they're giving up an important right. But in the context of a TEFRA partnership, they already are not going to get a notice of deficiency because they're a TEFRA partnership. So if you're a member of a TEFRA partnership, the only thing that you're giving up in this election is the right to change in the future to be something other than a TEFRA partnership, which is a pretty small in the scheme of things. It's a pretty small right in the context of all of the rights that the partners have given up by being in a TEFRA partnership in the first place. With respect to the DBI adjustment, again, that's the only adjustment that remains in the 04 NOD case. As I indicated, DBI had GG Capital as a partner. GG Capital claimed the loss, and it was disallowed in an NOD. That can never happen, never. It never happens that the partnership item adjustments of DBI can be resolved in an NOD to a partner of GG Capital. So that was an issue that wasn't particularly analyzed by the tax court, but that's black-letter law. It's simple. So we have a situation where the tax court misconstrued the statutory election of TEFRA and the DBI, and so when we get to the question of whether the AD global items were sufficiently identified for the purpose of the 09 NODs, there's really not much reason to put a lot of weight in the tax court's jurisdiction or determination because it essentially punted on the jurisdictional issues in the case. Okay, super. Mr. Mather, thank you. You've reserved three minutes for rebuttal. We'll hear from Mr. Sheehan. May it please the Court, Anthony Sheehan for the Commissioner. Mr. Mather has covered three of the many issues in this case today. I will address all of those, and there are many other issues in the case if the Court wishes to address. Sorry, can you address first the standard of review because it seems that there's a disagreement about the standard of review between the parties? Okay, well, I'll start with the easy one. Statutory interpretation and jurisdiction are de novo. Many of these issues, like the timeliness of the mailing of the 04 Notice of Deficiency, depend on factual findings that's clearly erroneous. Where the real dispute is is in the procedural rulings. In a procedural ruling, if the lower court says, I interpret this rule or this statute to mean X, therefore my procedural ruling is Y, that would be de novo. If it's a simple application, facts and circumstances, that's abuse of discretion. And our position, Your Honor, is that all of the tax court's procedural rulings here turn on its discretion, not on its parsing of statutes or rules. We'll start first with the small partnership. And I think that, as Judge Branch pointed out, the easiest way to do it is that the election was not signed by anybody but Mr. Greenberg. Now, Mr. Mayor, there is an advanced interpretation of this statute, which I quite frankly think is absurd that only a TEFRA partnership can elect to be in TEFRA and that the commissioner, despite the statute, then put a regulation for a small partnership, which can't elect anyway because of the statute. That just doesn't make any sense. So we have to start with 6231A1A, which sets forth the general rule that a partnership is an entity that files a partnership return. That's a partnership. In general, they're all placed in TEFRA. However, it also acknowledges that there's the exception, which is small partnerships. 6231A1Bi defines a small partnership. And if a partnership meets those things and has not made an election, it is a small partnership. It does not go under TEFRA. Then B2i is the exception to the exception. And it allows the small partnership, if it so wishes, to elect back into TEFRA. And the key phrase here in Bi is, may for any taxable year elect to have Clause 1, small partnership, not apply. The B2i? B2i, yes. That one doesn't specify how the partnership can make the election, correct? The statute itself? The statute itself does not specify. So it fell under, I think it's 6230K. Commissioner is authorized to make regulations for doing this. Authorized as a secretary to prescribe the regulations. To prescribe the regulations. And the regulation in this case says that every partner shall sign. And that makes sense because, as Congress pointed out in the legislative history, it anticipated that in a small partnership, people view themselves as co-owners. And they would want to make sure you get everybody's signature on there, at least everybody's approval on there. And we did not have that here. We have no independent evidence from Raymond Lee or from the guy named Tommy Battaglia. I mean, Lee didn't testify at trial, correct? No, Lee didn't testify, and nobody from Seladium testified. So going back to the statute, may for any taxable year elect to have Clause 1 not apply, which means Clause 1 has to apply before you can elect for it not to apply. So under that, this election was ineffective because GG Capital was a TEFRA partnership in 97. And if there's any doubt about any ambiguity in this statute, we don't think there is. But besides disagreeing on the interpretation, the regulation makes it crystal clear that you have to be a small partnership before you can elect not to be a small partnership. The second issue raised was the DBI issue. Interesting issue here, interesting in that in the tax court trial, Mr. Greenberg argued that, yeah, I claimed a $3 million loss, but I really should have taken a $34 million loss. And this jurisdictional issue wasn't raised until after the tax court ruled against him, but jurisdiction, of course, can be raised at any time. So we look at it. I think our brief does a good job on it, but the Supreme Court in a recent case, Brownback v. King, 141 Supreme Court at 750, was even more succinct. A federal court always has jurisdiction to determine its own jurisdiction, which means a federal court can decide a merits issue if it's also jurisdictional. So here's the dilemma we have here. It is true that if you're under TEFRA, partnership issues must be decided in the TEFRA framework. If you're not under TEFRA, then you don't decide in the TEFRA framework. You go with the individual notice of deficiency. Well, here the tax court ruled that there was no proof that GG Capital was ever a partner in DBI, in which case if there's no partnership interest, TEFRA doesn't apply and it follows on the merits. There cannot be a loss from abandonment. So in here, jurisdiction and the merits are intertwined. And the tax court, since it has jurisdiction to determine its jurisdiction, had jurisdiction to determine if TEFRA even applied here. And that also distinguishes this matter from the Blanian case cited in the reply brief. Well, Blanian was already under TEFRA. It arose out of the collapse of the Finley-Cumble law firm. There was a TEFRA partnership level proceeding in which all of the partnership items had to be worked out. It came down to an affected item proceeding, which follows on after a partnership proceeding where a partner tried to argue at that point, I wasn't a partner. Well, in that case, in that framework, you have to, he should have brought that up at the partnership level proceeding. We're a step removed from that. Was GG Capital ever a partnership? Does TEFRA even apply? The tax court found the answer is no. And that is also correct as a matter of policy. Otherwise, a taxpayer could put a deduction on his return, say partnership deduction and a number, and then try to argue it's a fait accompli. The tax court can, though, and should say no. There was no partnership here to begin with. TEFRA doesn't apply. The third thing that was raised this morning, which was only touched on, was the converted items notices of deficiency and whether the items disallowed were AD Global items. That follows off of the Ninth Circuit's opinion in SCAR. What happened in SCAR was that the IRS admitted in a notice of deficiency that it had not even, it did not have possession of the return. It disallowed a deduction, never claimed on the return, for a tax shelter in which those taxpayers had never invested, and then determined the deficiency based on the disallowed deduction times the maximum tax rate for that year. That is not this case. In this case, the IRS had a GG capital return for every year. All the deductions disallowed derived from numbers on those returns. Every single one of them was a number on a tax return. It is undisputed, and page five of the opening brief, Greenberg accepted the tax court's findings, it is undisputed that they did a AG Global son-of-boss transaction. And number four, the notices of deficiency calculated a revised taxable income and determined it on that. Now the question, well, they say none of these deductions were AD Global deductions. They came from others. Yeah, we did the transaction, but we didn't take any deductions for it. Well, that goes under the Ninth Circuit's opinion in CLAP. When you have a complicated, messy situation like you have here, the IRS is entitled to send out notices of deficiency that may be duplicative, that may advance many theories as to where deductions came from and why they are disallowed. That is to prevent a whipsaw. That is to prevent the IRS getting caught with, well, it was actually this theory, not that theory. The key is, though, that you have to get it all straightened out by the end of the case, and that was done here in the Rule 155 computations, which eliminated any duplication, which allocated all the items out in accordance with the tax court's findings, and which the tax court correctly accepted. Can I take you back to this 1997 handwritten purported election form? And so when I was talking with your opposing counsel, kind of walking through the Hoover-Greenberg signed on behalf of the other partners, and we talked about some of the specific issues related to seladium. In 26 CFR 301.6231A1I1TB2, there's a requirement that the election shall be signed by all persons who were partners of that partnership. But I'm not seeing anything in either the CFR or the statute that would prevent one partner from signing on behalf of the other partners, correct? I would interpret these shall be signed by all persons. Now, of course, if you had something like a power of attorney, which gave him the authorization to sign something like this, then we probably would say, yes, the power of attorney did give him the authority to act as that other person and affix their signature. But there are no powers of attorney here, nor can a general California statute about conducting business on behalf of a partnership overrule a federal regulation which says that all, that the election shall be signed by all persons who are partners. We just, it's not the circumstance in this case where we have, and we have no evidence that we have any authority given by Lee or by Seladium to affix that signature on their behalf. So if during the trial, Mr. Greenberg had brought forth evidence that the persons that he had signed on behalf of, if those people had come forward and testified, that would not be an issue. Mr. Goddard testified that he had given Mr. Greenberg authority,  so if there are no questions on the other issues, I would rest on the government's brief and ask the court to affirm and thank the court for its time. Mr. Sheehan, thank you very much. Mr. Mather, you have three minutes remaining. Thank you, Your Honor. The government contends that it doesn't make sense that a TEFRA, only a TEFRA partnership could make a TEFRA election. And you could think that, but that's exactly what the statute says. The statutory construction argument here kind of escapes me, where we have kind of a theoretical policy argument, meaning basically overruling the express terms of the statute. And that to me is a total non-starter, but I would furthermore suggest, as I said before, is that there is a reason that there would be an election, because it has continuing effect. And that's what the statute does. The regulation that we've been talking about is something that is not, is the type of election that is not expressly authorized by the statute. It is a regulatory election, which the government has issued many regulations allowing elections, and this is just another instance of that. But that is not the election in our case. And so we can't be bound by the terms of what that regulatory election is. Furthermore, the regulation does not even, if you read it closely, does not even purport to be the exclusive means of making an election. It's like it is a permitted means for a small partnership to make an election. So here we have election under the statute by a different type of partnership that has a whole different motivation and a whole different reason that the restrictions in the regulation wouldn't even ordinarily apply. With respect to the DBI issue, I think I follow the government's circular argument that if you decide you have jurisdiction, then you look at whether you have jurisdiction to decide if you have jurisdiction. But the issue in this case, and this is perfectly clear, is that the IRS disallowed the DBI loss claimed by GG Capital. GG Capital claimed a partnership interest on its return. That was expressly disallowed by the IRS. So the issue of whether that partnership was valid or not is presented by the claim of GG Capital to claim a partnership interest. That issue of whether or not it had a partnership interest is itself a partnership item. And that's why it had to be decided in a DBI-level case because the determination of who has partnership interests is a partnership interest itself. So you can't go the circular route the government contends to get to the point. And additionally, unlike what the government suggested, the tax court never in its opinion disregarded GG Capital as a partnership. And finally, on the 09 NODs, it's not just a SCAR issue. The question really fundamentally is, was there ever a determination that 80 global partnership items were claimed? Because by definition, the converted item notice of deficiency had to have 80 global items actually claimed by the partners. And there's no determination on that issue whatsoever. And so absent that determination, there can't be jurisdiction over those notices. And for all those reasons, unless there's further questions, we rest. Very good. Mr. Mather, thank you very much. Mr. Sheehan, thank you as well. That case is submitted. Final case of the day is...